**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| ALITA V.H., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 25 C 7051 |
| v. | ) | |
| | ) | Judge Sara L. Ellis |
| COMMISSIONER OF SOCIAL SECURITY, | ) | |
| | ) | |
| Defendant. | ) | |

**OPINION AND ORDER**

Plaintiff Alita V.H. seeks to reverse the final decision of the Commissioner of the Social Security Administration (the "Commissioner") denying her application for supplemental security income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. § 1381 *et seq.* Because the Court cannot find that the administrative law judge ("ALJ") committed reversible error in his evaluation of the opinion of Alita V.H.'s neuropsychologist, the Court affirms the denial of benefits.

**BACKGROUND**

**I. Procedural History**

Alita V.H. had received SSI benefits from 2005 to December 2017. AR 81, 112. She had applied again for SSI in February 2019, but the Social Security Administration ("SSA") denied that application in 2020. AR 149–167.[1] On January 13, 2022, Alita V.H. filed another application for SSI benefits, alleging an inability to function and/or work as of June 5, 2015 based on schizoaffective disorder. AR 169, 259–62. On February 23, 2023, the SSA initially denied her application. AR 168. The SSA denied her reconsideration request on September 12,

[1] The administrative record includes hearing testimony and documents related to this prior SSI application. The Court only recounts information related to that application and any prior treatment to the extent relevant to resolution of the pending appeal.

2023. AR 178, 287–89. Alita V.H. requested a hearing before an ALJ, who held a hearing on April 25, 2024. AR 15. The ALJ issued a written opinion on June 4, 2024, finding that Alita V.H. did not qualify as disabled. AR 12–36. The Appeals Council denied Alita V.H.'s request for review on May 19, 2025. AR 1–3. Alita V.H. then filed this action for judicial review of the SSA's denial on June 25, 2025.

## II. Factual Background

Alita V.H., who was born in 1978, was formally diagnosed with schizophrenia in 2005. AR 3010. She testified that her schizophrenia causes auditory hallucinations, paranoia, delusions, cognitive issues, lack of motivation, and trouble following directions. AR 44. She last had psychotic symptoms after her mom died in 2022, and this psychotic episode lasted several months. AR 44. Alita V.H. has found that stressful situations cause her to have psychotic symptoms. AR 45. She has taken Abilify to manage her schizophrenia since 2005. AR 46–47.

Alita V.H. last worked in 2015 as an assistant to a visually impaired post-doctorate student, with that employment lasting six months. AR 43. She indicated that she stopped working because she had a psychotic break from the stress of working. AR 43, 575. Prior to 2015, Alita V.H. obtained various employment through Platinum Club House, a mental health organization, including at the National Candy Store. AR 43–44. More recently, Alita V.H. had volunteered at the Animal Care League, going through donations and pricing them. AR 52. But she did not use the register because she found it too complicated, and she stopped working there because she felt uncomfortable interacting with the public. AR 52.

According to Alita V.H., working causes her "great stress and exhaustion," making it difficult for her to "perform the job requirements or function in every-day life." AR 575; *see*

*also* AR 583 ("[W]hen stressed the 'positive' symptoms [of schizophrenia] such as hearing voices, delusions, & paranoia make functioning virtually impossible."). She believes she cannot be a good employee because her medications and schizophrenia make her low energy, she lacks motivation, and she experiences negative schizophrenic symptoms that affect her cognition, memory, and concentration. AR 44, 575, 583. She also assesses herself to have "trouble paying attention, with following instructions, . . . low affect & trouble concentrating." AR 576; AR 583 ("Following instructions is challenging for me. I need things repeated over & over. My concentration is poor & I often have trouble finishing house-hold tasks . . . in a timely manner."). She also noted needing reminders to complete basic tasks such as laundry, AR 578, and she does not drive because she cannot "focus and concentrate well enough to feel safe driving," AR 579.

Alita V.H. moved from California to Oak Park, Illinois in 2021. AR 1112. She lives in the basement apartment of a two-flat that she shares with her step-father, a half-sister, and two school-age nieces. AR 633. She sometimes watches her nieces for about an hour. AR 633. Her step-father evaluated that she "has very little competence in the daily tasks of life and no interest in gaining more, allowing herself to be defeated by the slightest obstacle." AR 633. He also noted that she focuses "on the hazards that might be involved" in a task or activity "to an extent well beyond a realistic perspective." AR 633.

## III. Medical Evidence

Dr. Michael Auza performed a comprehensive psychiatric evaluation of Alita V.H. on April 4, 2014. AR 1079. He noted that while her positive symptoms of schizophrenia appeared to have resolved due to her compliance with her medications, she still experienced significant negative symptoms. AR 1081. He also found that she "has difficulty understanding instructions and keeping on tasks even with simple tasks," having a "mild to moderate impairment even with

simple instructions" and "significant moderate to severe difficulty" in understanding "[c]omplex instructions." AR 1081–82. Dr. Auza believed Alita V.H. would likely have "moderate impairment in performing work activities on a consistent basis because of her difficulty with concentration" and "moderate difficulty with the usual stressors encountered in a work environment such as changes in routine." AR 1082. He further opined she "would likely require great supervision to perform even simple tasks." AR 1082.

Radhe Lesny, a psychotherapist who Alita V.H. had seen beginning in February 2017, wrote in June 2019 that Alita V.H. struggled with "symptoms of dissociation, difficulty concentrating, paranoid ideation, obsessive thoughts, thought blocking, depression, fatigue, and anxiety." AR 1005. Lesny opined that Alita V.H. could not work full-time because of her mental health issues. AR 1005.

In a medical source statement dated December 2019, Dr. Michael H. Levin, a psychiatrist Alita V.H. saw, indicated that, among other things, Alita V.H. had poor memory, sleep disturbance, difficulty thinking or concentrating, decreased energy, and generalized persistent anxiety. AR 1049. He indicated that she had extreme limitations in her ability to remember locations and work-like procedures and understand and remember detailed instructions, and moderate limitations in her ability to understand and remember one- or two-step instructions. AR 1050. He noted she had marked or extreme limitations in areas of sustained concentration and persistence and some mild or moderate limitations related to social interactions. AR 1050–51. While Dr. Levin opined that she had an extreme limitation in her ability to respond appropriately to changes in the work setting, he indicated she only had a moderate limitation with respect to her ability to be aware of normal hazards and take appropriate precautions and to set realistic goals or make plans independently. AR 1051. Dr. Levin also completed a medical

listing criteria assessment form on January 16, 2020, indicating Alita V.H. met Listing 12.03 for schizophrenia because she had medical documentation or delusions or hallucinations, an extreme limitation in her ability to concentrate, persist, or maintain pace, and her schizophrenia was serious and persistent, with her undergoing mental health therapy with medication support and evidence of a minimal capacity to adjust to demands that were not already part of her daily life. AR 1076.

After moving from California to Illinois in 2021, Alita V.H. began therapy through Thrive Counseling Center ("Thrive"). AR 1111–12. Notes from her June 2021 session indicate her judgment, memory, mood, affect, orientation, and cognition fell within normal limits. AR 1126. In November, her therapist indicated she had a constricted affect but otherwise found all other areas within normal limits. AR 1167–68. In April 2022, a different therapist again noted that Alita V.H.'s judgment, memory, mood, orientation, and cognition all appeared within normal limits, specifically stating that she was adjusting to her mother's death earlier in the year with appropriate grief and insight. AR 1209–10. Alita V.H.'s next counseling record from October 2022 reflects no changes in her mental status, AR 1251–52, while counseling notes from April 2023 and October 2023 document her judgment, memory, mood, orientation, and cognition as within normal limits and her affect as constructed. AR 1521, 1564. The record includes notes of individual sessions on a near-weekly basis between January and March 2024. AR 3040–56. Alita V.H. also took part in art therapy and mindfulness group sessions through Thrive in 2024. AR 3028–38.

On March 15, 2023, Alita V.H.'s therapist, Angela Potaczek, completed a mental residual functional capacity questionnaire. AR 1435–38. She noted that Alita V.H. had minimal functioning, needed family support, and could not live independently. AR 1435. Potaczek

indicated that Alita V.H. suffered from, among other things, disturbances in memory, insight, judgment, sleep, executive functioning, perception, and concentration. AR 1435. She also noted that Alita V.H. had difficulty making independent decisions, a short attention span, impulsivity, abnormalities in cognitive processing, hypersensitivity to negative evaluation, poor conceptual, social, or practical skills in adaptive functioning, and difficulty with organizing. AR 1436. Potaczek assessed that Alita V.H. could not sustain an ordinary routine without special supervision, make simple work-related decisions, complete a normal workday and workweek without interruptions from psychologically based symptoms, respond appropriately to changes in a routine work setting, or deal with normal work stress. AR 1436–37. She did not believe that Alita V.H. could perform semi-skilled or skilled work, and she further opined that Alita V.H. would be off-task frequently, have difficulty completing an eight-hour workday, and have frequent absences. AR 1437. Finally, Potaczek concluded that Alita V.H.'s "symptoms impede her ability to work at all." AR 1438.

Alita V.H. also saw a psychiatrist at Thrive for medication management through March 2023. AR 1370, 1434. In March 2022, the psychiatrist noted she had a flat affect and euthymic mood, but that she had good attention, memory, and intellectual function. AR 1372–73. In May 2022, the psychiatrist noted a constricted affect, but good attention, memory, and intellectual function. AR 1380–81. Beginning in April 2023, Alita V.H. met with Dorothy Tessman, a psychiatric nurse practitioner. AR 2653. In May 2023, Tessman noted that Alita V.H. "continue[d] with severe intermittent distress preventing her from [instrumental activities of daily living ("IADLs")] including phone calls, managing appointments, managing finances, and with physiological distress and incontinence that would make employment impossible." AR 2653. Tessman noted Alita V.H. had "difficulty recalling some aspects of day to day life" and

that Alita V.H.'s sister supplied details that Alita V.H. could not recall. AR 2654. In August 2023, Tessman indicated that Alita V.H. "does not have capacity to display a steady composed facial expression as would be expected in most jobs." AR 2652.

In June 2023, Alita V.H. switched her medication management appointments to Dr. Sean Conrin at Cook County Health's Austin clinic. AR 1474, 1481. After an appointment with Dr. Conrin on August 31, 2023, AR 2704, Dr. Conrin provided a letter in which he opined that Alita V.H. was "entirely disabled" and could not maintain full-time employment because she "has difficulty with attending basic activities" and has "high levels of anxiety, sense of dread and difficulty with initiative," AR 1500. He also noted that she had "considerable cognitive difficulties that interfere with her learning new tasks," and that while she expressed a "wish to be more active," she in actuality had difficulty with "basic functioning." AR 1501. Dr. Conrin acknowledged that based on her background, Alita V.H. "appears more capable of work than she actually is," having a college degree and "speak[ing] well." AR 1501. He also completed a mental residual functional capacity ("RFC") assessment for Alita V.H. that same day, indicating she had moderate and marked limitations in the areas of understanding and memory, sustained concentration and persistence, and adaptation, with some moderate limitations in social interaction as well. AR 1503–04.

On February 10, 2023, Dr. Sanka Samardzija, a clinical psychologist, performed a psychological evaluation of Alita V.H. AR 1280–84. Dr. Samardzija noted that Alita V.H. presented with a flat mood, congruent affect, and very slight motoric movement. AR 1280. Dr. Samardzija considered Alita V.H. to be a "good historian" who "was able to remember enough of her past history to be considered an adequate informant." AR 1280. Dr. Samardzija remarked that Alita H. displayed narcissistic traits, with "grandiosity [that] was above even the

schizophrenia," an "arrogance about her," and "an air about her, where maybe she knew more than the examiner, or even anybody else." AR 1281. Based on this, Dr. Samardzija opined that Alita V.H. had "a personality disorder." AR 1281–82. Dr. Samardzija noted that Alita V.H. could "self-travel, fill out forms, and manage money without assistance," as well as "shop, cook and clean." AR 1282. Dr. Samardzija did report that Alita V.H. had impaired memory, though he noted that she had "no impairment in calculations, no impairment in general knowledge, no impairment in the ability to compare and contrast objects, no impairment in judgment and no impairment in abstract thinking relative to interpreting proverbs." AR 1283–84. He believed her narcissistic personality disorder "would really be the key reason why she has difficulties working, as she said there are a lot of stressors." AR 1284.

Dr. Lauren Piper performed a neuropsychological evaluation of Alita V.H. on January 23, 2024. AR 3010. Dr. Piper administered a number of neuropsychological tests, reviewed medical records, and interviewed Alita V.H. and her sister. AR 3010. Dr. Piper noted that Alita V.H. suspected her cognitive difficulties had worsened over time, while her sister believed they had remained stable, only worsening when Alita V.H. experienced positive schizophrenia symptoms. AR 3010–11. Dr. Piper indicated that Alita V.H. continued to receive assistance with IADLs, but she could independently remember to take her medication. AR 3011. Alita V.H. and her sister reported to Dr. Piper that Alita V.H. did not pay bills, could prepare simple meals but otherwise did not cook, did not drive, required prompting and encouragement to do things, and had difficulty remembering directions to familiar places. AR 3011. Her positive symptoms of schizophrenia were generally well-controlled with medication, while stress most frequently triggered her positive symptoms. AR 3011. Dr. Piper noted that Alita V.H. indicated she had attended individual psychotherapy weekly for the past two to two and a half years. AR 3011.

Dr. Piper observed that Alita V.H. was "fully alert and oriented to person, place, time, and situation," and "did not evidence significant word-finding difficulties or paraphasias." AR 3012. She noted that Alita V.H. had adequate attention for testing purposes, and her "[t]hought processes were logical, linear, and mildly slow." AR 3012. She evaluated Alita V.H.'s awareness and insight as fair, as well as that she presented with a mildly anxious mood and blunted affect. AR 3012. Dr. Piper noted that Alita V.H. reported that she found the evaluation "pretty exhausting," and so was "mentally drained," but Dr. Piper did not observe Alita V.H. "to be unduly fatigued or tired during the evaluation," with Alita V.H. "put[ting] forth good effort and persistence on testing with encouragement." AR 3012. Dr. Piper summarized the evaluation as follows:

> Neuropsychological evaluation indicates that Ms. [V.H.]'s intellectual abilities are solidly average overall, with a relative strength in abstract verbal reasoning (in the exceptionally high range). Academic achievement abilities (specifically word reading and spelling) are also average. In this context, Ms. [V.H.] has impairment in learning and memory. Specifically, her ability to encode, recall, and retain verbal information is severely impaired. Her ability to encode and recall novel visual information is severely impaired, and her ability to retain novel visual information is borderline impaired. She has a mild relative weakness in novel problem-solving and mental flexibility (not impairment). Other aspects of executive functioning (e.g., set-shifting, response inhibition, planning/organization) are within normal limits. Attention, processing speed, language functions (confrontation naming and verbal fluency), and visuospatial/constructional abilities are within normal limits. On interview, Ms. [V.H.] and her sister reported that apathy significantly interferes with independence in her daily life; she requires much prompting and encouragement to initiate and complete tasks. Additionally, she feels anxious and overwhelmed by certain tasks (typically those that require multiple steps), which also interferes with daily functioning. She remembers to take her medication, but has difficulty remembering what was said during healthcare appointments.
>
> Emotionally, Ms. [V.H.] endorsed a mild level of anxious symptoms and minimal depressive symptoms on objective self-

> report measures, though her score on the latter was just below the cut-off for mild depressive symptoms. During the clinical interview, she endorsed feeling worried and overwhelmed at times about her recent breast cancer diagnosis. Ms. [V.H.] and her sister think she is coping relatively well with the diagnosis. Mood was mildly anxious during the evaluation.

AR 3014. Dr. Piper found Alita V.H.'s history and results "consistent with unspecified neurocognitive disorder characterized by impaired learning and memory (recall and retention)," with "[s]ymptoms of schizophrenia undoubtedly contribut[ing] to deficits in her daily functioning." AR 3014. Dr. Piper indicated it was unclear the "degree to which her deficits in learning and memory uniquely contribute to difficulties with IADLs," but that "they have likely contributed to impairment in important areas of functioning (e.g., academic and occupational functioning)." AR 3014. She considered Alita V.H.'s "reported difficulties with attention/concentration, processing speed, and memory that began in high school and worsened during college [to] likely [be] part of the prodromal phase of schizophrenia." AR 3014. Dr. Piper opined that, "[f]rom a cognitive perspective, the pattern and severity of [Alita V.H.'s] learning and memory deficits would significantly interfere with her ability to perform work duties across job settings even with reasonable accommodations." AR 3015.

## IV. ALJ Decision

The ALJ first found that Alita V.H. had not engaged in substantial gainful activity since the date she filed her SSI application, January 13, 2022. AR 17. He then concluded that she suffered from schizophrenia, which significantly limits her ability to perform basic work activities. AR 17. At step three, the ALJ rejected Alita V.H.'s argument that her schizophrenia met the requirements of Listing 12.03 and instead concluded that she did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. AR 18. The ALJ noted that the State

Agency psychologists determined that Alita V.H. had mild limitations in understanding, remembering, or applying information and adapting or managing oneself and moderate limitations in interacting with others and concentrating, persisting, or maintaining pace. AR 18. But the ALJ found these only partially persuasive in light of additional evidence and testimony that Alita V.H. provided, concluding instead that she had moderate limitations in each area. AR 18–20. The ALJ noted that while Alita V.H.'s neuropsychological evaluation "showed significant impairment in the ability to encode, recall, and retain verbal and novel visual information," it also showed that her attention, processing speed, visuospatial/constructional abilities, and planning/organization abilities fell within normal limits. AR 18–19. The ALJ assessed Alita V.H. to have the RFC "to perform work at all exertional levels, with no restriction of her ability to lift and/or carry, sit, stand or walk throughout an 8 hour workday." AR 20. With respect to her RFC, the ALJ further stated:

> The claimant is limited to working in non-hazardous environments, i.e., no driving at work, operating moving machinery, working at unprotected heights, and she should avoid concentrated exposure to unguarded hazardous machinery. The claimant can understand, remember and carry out simple instructions. The claimant can use judgment to make simple work-related decisions. The claimant can tolerate occasional interactions with supervisors and coworkers. The claimant can tolerate no interactions with the general public. The claimant cannot perform work requiring a specific production rate such as assembly line work, but can tolerate end of day quotas. The claimant can deal with occasional changes in a routine work setting.

AR 20.

The ALJ recounted the following about Alita V.H.'s psychological consultative evaluation on February 10, 2023 with Dr. Samardzija: Alita V.H. "showed some impairment in memory, as she was unable to recall more than five digits forward, three digits backward, or to repeat three objects more than one minute later," but she "exhibited no impairment in

calculations, general knowledge, judgment and in abstract thinking relative to interpreting proverbs." AR 22. The ALJ also recounted the following from Alita V.H.'s neuropsychological evaluation on January 23, 2024 with Dr. Piper: Alita V.H. "did not evidence any significant word-finding difficulties or paraphasias," "her comprehension was within normal limits," she "exhibited adequate attention for testing purposes," her "thought processes were logical, linear, and mildly slow," and her "[a]wareness and insight were fair, task-oriented and organized." AR 24. The ALJ noted that Alita V.H.'s testing results from that evaluation revealed an average intellectual ability, "with a relative strength in abstract verbal reasoning" but a "significant impairment in her abilities to encode, recall, and retain verbal and novel visual information" and a "mild relative weakness in novel problem-solving and mental flexibility." AR 24. But the ALJ also indicated that the examination showed that other aspects of Alita V.H.'s executive functioning, including planning/organization, fell within normal limits, as did her "attention, processing speed, language functions, and visuospatial/constructional abilities." AR 24. The ALJ noted Dr. Piper's impression that Alita V.H.'s history and examination were consistent with an unspecified neurocognitive disorder. AR 24.

The ALJ accepted the State Agency psychologists' finding that Alita V.H. experienced "no more than moderate mental health-related limitations." AR 25. He did not find Dr. Sean Conrin's opinion that Alita V.H. was disabled persuasive given that it was based largely on reports from Alita V.H.'s family, did not identify objective findings or specific evidence to support his assessment, and did not reconcile his opinion with documented mental status examinations. AR 26. As for Dr. Piper, the ALJ stated as follows:

> Evaluating neuropsychologist, Dr. Lauren Piper, opined that the claimant's learning and memory deficits limit her capacity for novel, complex medical decision-making and that her "learning and memory deficits would significantly interfere with her ability

> to perform work duties across job setting even with reasonable accommodations. As such, it is recommended she apply for disability" (Exhibit B22F, p.6). While I note that Dr. Piper specializes in neuropsychology, she based her opinion on a one-time evaluation of the claimant that is recently dated (January 23, 2024), with no indication that she believes such limitations existed throughout the relevant adjudication period. Moreover, Dr. Piper's opinion appears partially inconsistent with her own findings. Although she did assess significant impairment in the claimant's abilities to encode, recall, and retain verbal and novel visual information, she reported that the claimant's intellectual ability was average overall, with a relative strength in abstract verbal reasoning; thus, her opinion that the claimant has learning deficits that would preclude her ability to work is not entirely clear. Furthermore, Dr. Piper's opinion is inconsistent with other documented examinations, such as the claimant's psychological consultative exam, where the claimant did have some impairment in memory, but exhibited no impairment in calculations, general knowledge, judgment and in abstract thinking relative to interpreting proverbs (Exhibit B6F, p.6). In addition, both Dr. Piper and consultative examiner, Dr. Samardzija, noted that the claimant had no issues understanding information presented to her.

AR 26.

Although Alita V.H. had no past relevant work, the ALJ found that jobs existed that she could perform. AR 28. Specifically, the vocational expert had testified that Alita V.H. could perform the job of a marker, a mail clerk, and a labeler. AR 29. As such, the ALJ found that Alita V.H. had not been under a disability since January 13, 2022. AR 29.

## LEGAL STANDARD

### I. Standard of Review

In reviewing the denial of disability benefits, the Court "will uphold the Commissioner's final decision if the ALJ applied the correct legal standards and supported her decision with substantial evidence." *Bates v. Colvin*, 736 F.3d 1093, 1097 (7th Cir. 2013). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019) (quoting *Consol. Edison Co. v. NLRB*,

305 U.S. 197, 229 (1938)). Although the Court reviews the entire record, it does not displace the ALJ's judgment by reweighing facts or making independent credibility determinations. *Beardsley v. Colvin*, 758 F.3d 834, 836–37 (7th Cir. 2014). But the Court may reverse and remand the ALJ's decision if the ALJ committed an error of law or based her decision on serious factual mistakes or omissions. *Id.* at 837. The Court also looks to "whether the ALJ built an 'accurate and logical bridge' from the evidence to her conclusion that the claimant is not disabled." *Simila v. Astrue*, 573 F.3d 503, 513 (7th Cir. 2009) (quoting *Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008)). The ALJ "need not provide a complete written evaluation of every piece of testimony and evidence," *Shideler v. Astrue*, 688 F.3d 306, 310 (7th Cir. 2012) (citation omitted), but "[i]f a decision 'lacks evidentiary support or is so poorly articulated as to prevent meaningful review,' a remand is required," *Kastner v. Astrue*, 697 F.3d 642, 646 (7th Cir. 2012) (citation omitted).

## II. Disability Standard

To qualify for SSI, a claimant must show that she is disabled, meaning that she cannot "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). To determine whether a claimant is disabled, the SSA uses a five-step sequential analysis. 20 C.F.R. § 416.920(a)(4).[2] At step one, the ALJ determines whether the claimant has engaged in substantial gainful activity during the relevant period. *See id.* § 416.920(a)(4)(i). At step two, the ALJ considers whether the claimant's impairments are severe and meet the twelve-month durational requirement. *Id.* §§ 416.909, 416.920(a)(4)(ii). At

[2] The regulations contain separate sections for disability insurance benefits, *see* 20 C.F.R. § 404.1520, but "the processes of evaluation are identical in all respects relevant to this case." *See Craft*, 539 F.3d at 674 n.6. Because Alita V.H. applied only for SSI, however, the Court only cites to the SSI regulations here.

step three, the ALJ determines whether the claimant's impairment(s) meet or equal an impairment listed in the Social Security regulations. *Id.* § 416.920(a)(4)(iii); 20 C.F.R. Pt. 404, Subpt. P, App'x 1. If the claimant's impairment(s) meet or equal a listing and meet the durational requirement, the claimant is disabled; if not, the analysis continues, and the ALJ assesses the claimant's RFC. 20 C.F.R. § 416.920(a)(4)(iii), (e). At step four, the ALJ considers the claimant's RFC and determines whether the claimant can perform past relevant work. *Id.* § 416.920(a)(4)(iv). If the claimant can perform past relevant work, she is not disabled. *Id.* If she cannot, the ALJ proceeds to step five, where the ALJ determines whether a substantial number of jobs exist that the claimant can perform given her RFC, age, education, and work experience. *Id.* §§ 416.920(a)(4)(v), 416.960(c). If the claimant can perform other work, she is not disabled; if she cannot perform other work, she is disabled. *Id.* § 416.920(a)(4)(v). The claimant bears the burden of proof at steps one through four, and the burden shifts to the government at step five. *Weatherbee v. Astrue*, 649 F.3d 565, 569 (7th Cir. 2011).

**ANALYSIS**

Alita V.H. challenges the ALJ's evaluation of Dr. Piper's opinion, claiming that the analysis violates 20 C.F.R. § 416.920c. Alita V.H. argues that the ALJ should have found persuasive Dr. Piper's opinion that Alita V.H. had severe learning and memory deficits that would significantly interfere with her ability to work in any job even with reasonable accommodations. Had the ALJ relied on Dr. Piper's opinion, Alita V.H. argues that the ALJ would have included additional restrictions in Alita V.H.'s RFC that would have resulted in finding her disabled.

Under the applicable regulations, the ALJ must consider medical opinions and "evaluate the[ir] persuasiveness" based on the following five factors: supportability, consistency,

relationship with the claimant, specialization, and "other factors." 20 C.F.R. § 416.920c(a)-(c). The ALJ must "articulate how [he] considered the medical opinions" and "how persuasive [he] find[s] all of the medical opinions." *Id.* § 416.920c(a), (b)(1). The two "most important factors" for determining the persuasiveness of medical opinions are consistency and supportability, and an ALJ must "explain how [he] considered the supportability and consistency factors" for a medical opinion. *Id.* § 416.920c(b)(2).

With respect to "supportability," the regulations provide that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." *Id.* § 416.920c(c)(1). The regulations provide that with respect to "consistency," "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." *Id.* § 416.920c(c)(2). An ALJ must consider, but need not explicitly discuss, the three remaining factors when determining the persuasiveness of a medical source's opinion. *Id.* § 416.920c(b)(2).

Alita V.H. takes issue with two aspects of the ALJ's consideration of Dr. Piper's opinion. The Court initially quickly disposes of her second argument, that the ALJ improperly focused on the fact that Dr. Piper based her opinion on a one-time recent evaluation of Alita V.H. But the regulations specifically indicate that the ALJ may consider the examiner's relationship with the claimant, including the length of the treatment relationship and frequency of examinations, in determining the persuasiveness of a medical opinion. 20 C.F.R. § 416.920c(c)(3).

As for Alita V.H.'s other argument, she contends that the ALJ's explanation of the consistency factor is inaccurate and misleading because the ALJ considered Dr. Piper's report to be inconsistent with that of Dr. Samardzija when the two actually support each other. *See, e.g.*, *Lance H. v. Bisignano*, No. 1:23-cv-16944, 2026 WL 879323, at *4 (N.D. Ill. Mar. 30, 2026) ("Because the ALJ's analysis rested in part on a mistaken premise, that rationale cannot support the rejection of Dr. Tan's lifting and carrying restrictions."). The ALJ stated that "Dr. Piper's opinion is inconsistent with . . . the claimant's psychological consultative exam, where the claimant did have some impairment in memory, but exhibited no impairment in calculations, general knowledge, judgment and in abstract thinking relative to interpreting proverbs." AR 26. Alita V.H. does not take issue with the ALJ's factual statements about the results of her psychological consultative exam with Dr. Samardzija, *see* Doc. 13 at 8–9, which, if problematic, could warrant reversal and remand, *Beardsley*, 758 F.3d at 837 ("A reversal and remand may be required . . . if the ALJ based the decision on serious factual mistakes or omissions."). Instead, she challenges the conclusions that the ALJ drew from Dr. Samardzija's report when compared to Dr. Piper's opinion. While Alita V.H. may draw different conclusions from the record than the ALJ, the Court cannot "reweigh the evidence, resolve debatable evidentiary conflicts, determine credibility, or substitute [its] judgment for the ALJ's determination." *Reynolds v. Kijakazi*, 25 F.4th 470, 473 (7th Cir. 2022) (quoting *Gedatus v. Saul*, 994 F.3d 893, 900 (7th Cir. 2021)); *see also Bakke v. Kijakazi*, 62 F.4th 1061, 1068 (7th Cir. 2023) ("[I]t is not our place to reweigh evidence, even where reasonable minds might disagree about the outcome."); *Salvador H. v. Kijakazi*, No. 22 C 7254, 2023 WL 5017944, at *5 (N.D. Ill. Aug. 7, 2023) ("Where reasonable minds could differ on the weight of evidence, the court defers to the ALJ."). Here, the ALJ set forth his reasons for finding Dr. Piper's opinion unsupported and inconsistent with

not only her own findings but also those of Dr. Samardzija. This suffices to satisfy the requirements of § 404.1520c, and so the Court must uphold the ALJ's decision. *See Stepp v. Colvin*, 795 F.3d 711, 718 (7th Cir. 2015) (courts "uphold 'all but the most patently erroneous reasons for discounting a treating physician's assessment'" (quoting *Luster v. Astrue*, 358 F. App'x 738, 740 (7th Cir. 2010))); *Demetrius H. v. Bisignano*, No. 1:23-cv-14464, 2026 WL 1179998, at *5 (N.D. Ill. Apr. 30, 2026) (refusing the plaintiff's invitation to reweigh the evidence and finding instead that the ALJ's explanation of the rejection of two medical opinions sufficed where the ALJ discussed the "relevant evidence" and "provided reasonable explanations for finding the opinions from the state agency reviewers more persuasive").

## CONCLUSION

For the foregoing reasons, the Court affirms the ALJ's decision and terminates this case.

Dated: September 18, 2026

SARA L. ELLIS
United States District Judge